UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAURA DANIELLE ISIDO,

        Plaintiff,

    v.

CAROLYN W. COLVIN,

        Defendant.

Case No. 16-cv-06841-MEJ

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 18, 19

## INTRODUCTION

Plaintiff Laura Danielle Isido brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 18, 19. Pursuant to Civil Local Rule 16-5, the Motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record (AR), and the relevant legal authority, the Court hereby **GRANTS IN PART** Plaintiff's Motion and **DENIES** Defendant's Cross-Motion for the reasons set forth below.

## BACKGROUND

Plaintiff was born in 1963. AR 231. Plaintiff has an 11th grade education and worked as a file clerk in mental health rehabilitation services, and as an in-home care provider. AR 31. She alleges she has been disabled since November 2011, due to a combination of physical and mental impairments. AR 148. Imaging studies and physician examinations revealed abnormalities in her cervical spine. AR 379. Plaintiff's treating physician diagnosed her with a number of conditions including bilateral carpal tunnel syndrome, depression, insomnia, and hypothyroidism. AR 350.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On February 28, 2013, Plaintiff filed a claim for Disability Insurance Benefits, alleging

disability beginning on November 15, 2011.  AR 20.  On July 19, 2013, the Social Security

Administration ("SSA") denied Plaintiff's claim, finding she did not qualify for disability benefits.

*Id.*  Plaintiff subsequently filed a request for reconsideration, which was denied on February 14,

2014.  *Id.*  On March 6, 2014, Plaintiff requested a hearing before an Administrative Law Judge

("ALJ").  *Id.*  ALJ Michael Blume conducted a hearing on June 3, 2015.  *Id.*  Plaintiff testified in

person at the hearing and was represented by counsel, Jacqueline A. Forslund.

**A.**     **Medical Evidence of Record**

The relevant time period spans from November 15, 2011 through December 2014.

1.  <u>Marisa Woods – Nurse Practitioner</u>

Plaintiff received primary medical care from Nurse Practitioner (NP) Marisa Woods

throughout the relevant time period.  Plaintiff began treatment at La Clinica Pittsburg Medical on

February 21, 2012, at which time she reported excruciating pain in her hands since November

2011.  AR 350.  Plaintiff described other symptoms, including tingling in her hands and arms that

radiated up to her shoulders.  *Id.*  Narcotics did not relieve her pain.  *Id.*  Plaintiff was diagnosed

with bilateral carpal tunnel syndrome, depression, insomnia, and hypothyroidism; she was

prescribed Prednisone, Levothyroxine, Omeprazole, and Ambien.  AR 351.  NP Woods referred

Plaintiff to multiple specialists, referred her for medical testing, and reviewed the outcomes of the

referrals.  *Id.*

2.  <u>April Young, Ph.D. – Clinical Psychologist</u>

Dr. Young evaluated Plaintiff at the request of the SSA on June 21, 2013.  AR 387.  Dr.

Young observed Plaintiff was cooperative but tearful during the evaluation, and her verbal

reasoning and her ability to form abstract ideas was limited.  AR 389.  She displayed adequate

attention and concentration for conversation.  *Id.*  The examination revealed that Plaintiff was able

to recall 3/3 items immediately and 2/3 items after delay.  *Id.*  Dr. Young diagnosed Plaintiff with

depressive disorder not otherwise specified (NOS) v. adjustment disorder with depressed mood.

AR 390.  Based on Dr. Young's observations, Plaintiff would be able to deal with the public,

supervisors, and coworkers in an appropriate manner.  *Id.*  However, Plaintiff would be unable to

2

perform work activities without special or additional supervision. *Id.* She would have limited ability to adapt to the usual stress encountered in the work setting. *Id.*

### 3. Jacqueline James-Friedman – LMFT

Licensed Marriage and Family Therapist (LMFT) James-Friedman saw Plaintiff for an initial mental health evaluation on September 25, 2014. AR 486. LMFT James-Friedman's examination revealed Plaintiff was motor-agitated, suspicious, and impulsive. AR 452. Her mood and affect were anxious, depressed, and irritable/angry. AR 492. Plaintiff reported she had been shot at the age 14 and was subjected to physical and sexual abuse by her partner at age 24. *Id.* LMFT James-Friedman observed that Plaintiff did not have a significant impairment in any important area of life functioning and generally had no more than mild functional limitations. *Id.*

On October 28, 2014, LMFT James-Friedman documented the finding of a second evaluation using a medical source statement. AR 492. LMFT James-Friedman opined Plaintiff had extreme limitations in her ability to deal with the public and withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity. AR 471. LMFT James-Friedman rates extreme limitations as those that are defined as an almost constant impact on work or total limitation. *Id.* Moderate was defined as impacting the patient at least 10 to 15% of the workday. *Id.* Plaintiff was moderately limited in her ability to understand, remember and carry out simple one- or two-step job instructions, and to maintain concentration and attention for at least two hours increments. *Id.*

### 4. Robert L. Morgan Ph.D. – Clinical Psychologist

Dr. Morgan, a clinical psychologist, examined Plaintiff to provide a comprehensive psychological evaluation, focusing on her ability to perform work. AR 474. Dr. Morgan observed Plaintiff was cooperative, anxious, and tearful. *Id.* There was no evidence of malingering or fictitious behavior, and Dr. Morgan believed that Plaintiff put forth her best effort during the evaluation. *Id.* Dr. Morgan's mental status observation showed Plaintiff's working memory was satisfactory. *Id.* She was able to repeat four digits forward and two digits backward. *Id.* Plaintiff was impaired in her concentration, persistence, and pace. AR 480. Plaintiff reported that in the

past she has heard voices, stating "I think it was voices of people talking." AR 479.

Dr. Morgan assessed Plaintiff with a score of 44 on the Beck Depression Inventory II, suggesting severe depression. *Id.* Dr. Morgan diagnosed Major Depressive Disorder, single episode, and Chronic Pain Disorder associated with both psychological factors and a general medical condition. AR 480. Dr. Morgan evaluated Plaintiff with a score of 50 on the Global Assessment of Functioning (GAF) scale.[1] *Id.* Dr. Morgan opined that the likelihood is high that Plaintiff would emotionally deteriorate in a work-like environment. AR 482. Testing indicated that her life is probably constricted by her tension and anxiety, and she may not be able to meet even minimal role expectations without feeling overwhelmed. AR 481.

### 5. Calvin Pon, M.D.

On June 20, 2013, at the request of the SSA, Dr. Pon performed an orthopedic evaluation and observed Plaintiff had a slight limp and could squat only half way down because of low back pain and left lower extremity pain and numbness. AR 383. Dr. Pon identified decreased sensation in Plaintiff's left hand. *Id.* Ranges of motion were decreased as follows: in Plaintiff's neck, flexion was approximately 50 degrees (normal is 70-90), extension was 30 degrees (normal is 55), right and left lateral bending were approximately 20 degrees (normal is 35), and right and left rotation were approximately 40 degrees (normal is 70); in her lower back, flexion was approximately 60 degrees (normal is 75) and right and left lateral bending were approximately 10 degrees (normal is 35); in her shoulders, flexion and abduction were 150 degrees bilaterally (normal is 180); and in her hips, flexion was approximately 90 degrees (normal is 110-130). *Id.*

Dr. Pon diagnosed chronic neck, low back, and hip pain and opined Plaintiff should be able to stand and walk for a total of four to six hours and sit for a total of six hours in an eight-hour workday. AR 385. Further, Dr. Pon opined Plaintiff can lift ten pounds frequently and twenty pounds occasionally and could perform occasional postural activities. *Id.* Dr. Pon opined

---

[1] A GAF score of 51-60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV, p. 34.

there is no limitation in Plaintiff's ability to perform gross and fine manipulative tasks with both

hands. *Id.*

**B.     Plaintiff's Testimony**

Plaintiff attended school up to the 11th grade and does not have a General Education

Degree (GED). AR 61. Plaintiff resides in a condominium with her fourteen-year-old son. AR

62. The condo is located on the upper floor of the building. AR 62. For Plaintiff to ascend the

stairs, she must hold onto the rails and sometimes use a cane to pull herself up. *Id.*

A typical day for Plaintiff involves waking up at 10:30 in the morning and doing chores

such as cleaning, laundry, and grocery shopping. *Id.* Plaintiff testifies that she used to cook full

meals; however, the pain is now too excruciating for her to stand and cut using her hands. AR 71.

When she cannot finish cooking the meal, her son will finish for her. AR 70.

Plaintiff testified that she has difficulty with focusing and concentrating. AR 74. Her

mind "drifts off" into other things. *Id.* This causes her to rewrite or reread things she has already

completed in the past. *Id.* Plaintiff testified that her concentration has gotten worse with the pain,

and the medicine she takes makes her feel lethargic. *Id.* During the day, she has to lie down five

to seven times for about forty-five minutes each time. AR 76.

Plaintiff testified that she is unable to work because of pain in both hands and shoulders.

AR 66. Also, her spine causes pain all the way down her legs. AR 67. For her to bend over and

lift anything would cause pain. *Id.* Currently, Plaintiff can lift five to ten pounds, walk about

twenty minutes, and stand about fifteen minutes. *Id.* Plaintiff's last full-time job was as an

administrative assistant at All Valley Home Care. AR 63. Since 2011, Plaintiff has only been

offered one job which, due to excruciating pain, she could not finish. AR 65.

Plaintiff takes Ambien for sleep; Zoloft for depression; and Levothyroxine, a thyroid

supplement. AR 68. Three times a day Plaintiff takes Percocet and Gabapentin for pain. *Id.*

Plaintiff testified that she does not drink alcoholic beverages anymore because of the medications.

AR 79.

Plaintiff was shot with a gun when she was 14 years old. AR 69. Because of the incident

she has become very fearful and has nightmares of getting shot in the head. AR 70. At night, Plaintiff has a hard time falling asleep due to violence in her neighborhood that triggers her PTSD. AR 71. Plaintiff testified that when she goes out into public, she is always watching her surroundings because of the threat of violence. AR 69.

## C. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[2] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff has not performed substantial gainful activity since November 15, 2011. AR 22.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff has the following severe impairments: lumbar spinal stenosis, degenerative disc disease of the cervical spine, obesity,

---

[2] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

depressive disorder NOS, chronic pain disorder, and polysubstance abuse in questionable remission. AR 22.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets the listings. AR 23.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity (RFC). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with lifting of 10 pounds frequently and 20 pounds occasionally; occasional posture changes and climbing; and a limitation to simple repetitive tasks involving no contact with the public. AR 24.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined that Plaintiff could not perform past relevant work as a file clerk. AR 30-31.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there

United States District Court
Northern District of California

are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the Vocational Expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff would be able to perform the requirements of representative occupations such as the job of housekeeping cleaner, light work with an SVP of 2, of which 200,000 such jobs exist in the national economy; the job of photocopy machine operator, light work with an SVP of 2, of which 20,000 such jobs exist in the national economy; and the job of press operator, laundry, light work with an SVP of 2, of which 30,000 such jobs exist in the national economy. *Id.*

**D.      ALJ's Decision and Plaintiff's Appeal**

On July 6, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 32. This decision became final when the Appeals Council declined to review it on September 6, 2015. AR 1. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On June 15, 2017, Plaintiff filed the present Motion for Summary Judgment. On July 13, 2017, Defendant filed a Cross-Motion for Summary Judgment.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports

8

and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## DISCUSSION

In her Motion, Plaintiff raises two issues: (1) the ALJ's finding that Plaintiff had the mental capacity to perform several unskilled jobs is based on insubstantial evidence and several legal errors; and (2) the ALJ's finding that Plaintiff had the physical capacity to perform light work is based on insubstantial evidence and legal errors. The gravamen of Plaintiff's arguments is that she disagrees with the ALJ's weighing of the relevant medical opinions. The Court analyzes each medical opinion in turn to determine whether the ALJ's opinion was based on insubstantial evidence and/or legal error.

**A.      Standards for Evaluating Medical Opinions**

Physicians may render medical opinions, or they may "render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 615, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quotation marks and citation omitted). "If a treating or examining doctors' opinion is contradicted by another doctors' opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than offer conclusions. He must set forth his own interpretations and explain why they, rather than the doctors, are correct." *Id.*

An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion. *Id.* Generally, the SSA will give greater weight to an opinion that is more consistent with the record as a whole. 20 C.F.R. § 416.927(c)(4).

An "ALJ should not be a mere umpire during disability proceedings, but must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citation and quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (ALJ has "a duty to conduct an appropriate inquiry" if she believes she needs to know the basis of a treating physicians opinions in order to evaluate them); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("[A]mbiguous evidence . . . triggers the ALJs duty to 'conduct an appropriate inquiry.'" (quoting *Smolen*, 80 F.3d at 1288)).

**B.      The ALJ Erred in Rejecting Several Medical Opinions**

1.  Dr. Young

CE Dr. Young diagnosed Plaintiff with depressive disorder NOS v. adjustment disorder with depressed mood. AR 27. She concluded that Plaintiff would be mildly impaired in her

10

ability to perform one- and two-step tasks; could deal with the public, supervisors, and coworkers in an appropriate manner; had a limited ability to adapt to the usual stress encountered in a work setting; and could not perform work activities without special or additional supervision. AR 28. The ALJ rejected Dr. Young's opinion, finding it "inconsistent with the findings reported during Dr. Young's examination and unsupported by the Plaintiffs limited mental health treatment history and her description of her ability to perform activities of daily living." *Id*.

The ALJ erred in relying entirely on his own interpretation of Dr. Young's notes describing Plaintiff's ability to work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 (C)(3) ("[W]e must exercise great care in reaching conclusions about your inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician."). If the ALJ felt the voluminous record did not support Dr. Young's opinions, which Dr. Young offered after examining Plaintiff, the ALJ had a duty to fully develop the record and, at a minimum, ask Dr. Young to provide greater information regarding the basis for her opinion. *See Smolen*, 80 F. 3d at 1288 (The "ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interest are considered. If the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example by subpoenaing the physicians or submitting further questions to them." (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

The ALJ also erred in discrediting Dr. Young's medical evaluation due to Plaintiff's limited mental health treatment history. A claimant's limited treatment may be relevant to a claimant's credibility, but is not relevant to Dr. Young's opinion, which is based on clinical observations and professional expertise. "It is a questionable practice to chastise one with a mental impairment for exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Indeed, the Ninth Circuit has specifically held that a claimant's failure to obtain mental health is not a valid reason for rejecting an examining

psychologist's opinion. *Nguyen*, 100 F.3d at 1465 (ALJ erroneously rejected examining psychologist's opinion because of claimants lack of treatment records).

The ALJ also erred in discrediting Dr. Young's evaluation because of inconsistencies with Plaintiff's reported daily activities, which include laundry, cleaning, preparing meals, and helping to care for her children. Plaintiff emphasized that in performing these daily tasks, including preparing meals for her children, she often cannot complete the task and is heavily assisted by her son. Moreover, Plaintiff testified that she often must rest while performing daily activities, leading her to nap for several hours per day. The Ninth Circuit has repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See Smolen*, 80 F.3d at 1297 (the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication).

Finally, Defendant argues Plaintiff's ability to navigate the Bay Area Rapid Transit System (BART) without assistance contradicts Dr. Young's medical assessment that Plaintiff would need special or additional supervision while at work. AR 24. Dr. Young was tasked by the SSA to assess Plaintiff's mental capacity to perform sustained work in a "competitive work environment." AR 62-63. There is no evidence that Plaintiff's ability to ride BART contradicts Dr. Young's opinion. The Court finds the ALJ erred in relying entirely on his own interpretation of Dr. Young's notes, discrediting Dr. Young's medical evaluation, and failing to offer specific and legitimate reasons for doing so.

2. Dr. Morgan

Dr. Morgan opined Plaintiff has marked limitations in a number of functional areas, including her ability to maintain social functions, perform activities within a clear schedule and maintain regular attendance, and deal with stress in the workplace. AR 481-82. The ALJ rejected

Dr. Morgan's opinion, finding "it is not consistent with the Plaintiff's reported history, including her description of her activities of daily living and her social activities. Moreover, Dr. Morgan's conclusions were based upon a one-time examination." AR 29.

This is insufficient. First, the SSA tasked Dr. Morgan with assessing Plaintiff's mental capacity to perform sustained work in a "competitive environment." AR 62-63. The fact Dr. Morgan's medical opinion is inconsistent with Plaintiff's daily living and social activities is unsurprising. Nonetheless, as discussed earlier, the ALJ fails to provide any specific or legitimate reasons why performing a few household chores would contradict Dr. Morgan's opinion. Purely conclusory statements that a medical report is inconsistent with such activities will not suffice. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusion were supported by substantial evidence). Second, while the ALJ may give a one-time examination less weight, the ALJ should not reject it without specific and legitimate reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Court finds the ALJ erred in finding Dr. Morgan's medical opinion inconsistent with Plaintiff's daily living and social activities, and failed to offer specific and legitimate reasons for doing so.

3. <u>NP Woods</u>

On October 9, 2014, NP Woods opined Plaintiff was unable to perform even sedentary work and had been disabled to this extent since November 2012. AR 495. NP Woods treated Plaintiff throughout the relevant time period, had a longitudinal view of the nature and severity of Plaintiff's impairments, and referred Plaintiff to multiple other specialists for treatment. The ALJ rejected NP Woods' opinion, finding:

> NP Woods is not an "acceptable medical source," and the limitations in sitting, standing and walking which she identified are unsupported by the objective medical evidence. Moreover, Ms. Woods' conclusions are inconsistent with those of Dr. Pon, which are entitled to greater weight as he is a licensed physician and specialist in musculoskeletal impairments.

AR 28.

To the extent that NP Woods is not an "acceptable medical source," the opinions of "other

13

medical sources" such as nurse practitioners may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources" including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s) and physical and mental restrictions. SSR 06-03p. Simply rejecting NP Woods' medical opinion is error. *See Garrison v. Colvin*, 81 F.3d 996, 1013-14 (9th Cir. 2014) ("most important" error was [ALJ's] failure to recognize that a nurse practitioner, as a qualified "other source" could provide evidence regarding the severity of claimant's impairments and how it affected claimant's ability to work). Further, the Commissioner of Social Security, recognizing the realities of today's managed health care, stated "opinions from [other sources], who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p.

The ALJ also erred by failing to set forth specific, legitimate reasons that are supported by substantial evidence in the record. *See* Lester, 81 F.3d at 831. The ALJ's blanket statement that NP Woods' opinion is "unsupported by the objective medical evidence" does not suffice. *See Nguyen*, 100 F.3d at 1464 (ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion).

When weighing NP Woods' opinion, the ALJ was obligated to consider a number of factors such as: (1) the amount of time the medical source had treated the individual; (2) the amount of time the medical source has known and how frequently the source has seen the individual; (3) how consistent the medical opinion is with the other evidence and; (4) the degree to which the source presents relevant evidence to support an opinion. SSR 06-3p. Simply rejecting NP Woods' opinion without considering these factors is error. *See Garrison*, 759 F.3d at 1013-1014 (ALJ's "most important" error was her failure to recognize that a nurse practitioner, as a qualified "other source," could provide evidence regarding the severity of claimant's impairment

and how it affected claimant's ability to work).  The Court finds the ALJ erred in rejecting the medical opinion of NP Woods, and failed to offer specific and legitimate reasons for doing so.

### 4. Dr. Pon

The ALJ stated he gave "great weight" to orthopedic CE Dr. Pon's findings that Plaintiff could perform a "wide range of light work." AR 28.  The ALJ accepted Dr. Pon's assessment, finding Plaintiff could "perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b)" where light work generally requires "a good deal of walking or standing." AR 385.  Plaintiff argues this contradicts a portion of Dr. Pon's opinion, which indicates Plaintiff could be reliably expected to stand and walk for just 4 hours in an 8 hour workday.  However, Plaintiff misstates the record.  Dr. Pon actually opined that Plaintiff could stand or walk for a "total of 4-6 hours" in an 8-hour day.  AR 385.  An ALJ's finding need only be consistent with a doctor's assessed limitations, not identical to them.  *See Turner v Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Standing and walking for 4-6 hours in an 8-hour day is consistent with "a good deal of walking or standing."  Where an ALJ incorporates a doctor's assessed limitations into the RFC finding, there is no conflict to resolve.  *See id.* at 1222-23.  The Court finds the ALJ's RFC assessment consistent with Dr. Pon's medical opinion.

### 5. LMFT James-Friedman

LMFT James-Friedman opined Plaintiff has extreme limitations in her ability to deal with the public and withstand work-related stress and has moderate limitations in her ability to maintain concentration and attention for at least 2-hour increments.  AR 721-72.  The ALJ rejected LMFT James-Friedman's opinion, finding:

> [James-Friedman] is also not an "acceptable medical source" and her conclusions in two separate reports in the same month contradict one another.  Thus, in one report, she said that claimant did not have a significant impairment in any important area of life and generally had no more than mild functional limitations, but in the second report completed in the same month, she identified moderate and extreme limitations in the claimant's ability to meet the demands of work.  Further, her findings of moderate and extreme limitations are not supported by her treatment records, which document a very limited history and inconsistent with the results of Dr. Young's examination.

AR 29-30.

The ALJ erred in discounting LMFT James-Friedman's opinions about Plaintiff's extreme mental health limitations on the ground that LMFT James-Friedman is not an "acceptable medical source." The ALJ may discount testimony from "other sources" if the ALJ gives reasons germane to each witness for doing so. *Molina*, 674 F.3d at 1111. As a Licensed Marriage and Family Therapist, James-Friedman is a qualified "other source" who can provide evidence as to the severity of Plaintiff's mental health impairments and how it affects her ability to work. *Garrison*, 759 F.3d at 1013-14 (citing 20 C.F.R. § 404.1513(d)). The ALJ's only germane reason for rejecting LMFT James-Friedman's opinion is the apparent contradiction in the medical reports written during the same month.

The ALJ estimated that LMFT James-Friedman's medical opinions completed in the same month were contradictory of each other. AR 29. The September 25, 2014 report was based on a clinical interview to gather information for Plaintiff's mental health services. AR 486-87. LMFT James-Friedman was not assessing Plaintiff's ability to perform sustained work in a "sustained environment." James-Friedman's second report was a clinical assessment of Plaintiff's mental abilities. Having encountered these ambiguities, the ALJ made no attempt to further develop the record, or ask LMFT James-Friedman to explain the apparent contradictions within the reports. *Cf. Boyd v. Astrue*, 2011 WL 5515429, at *3 (W.D. Wash. Nov. 9, 2011) (finding no duty to develop the record where there was "no indication that the ALJ found the evidence to be ambiguous or the record to be inadequate"). The Court finds the ALJ erred in rejecting LMFT James-Friedman's opinion as an "other medical source," discrediting her evaluation because of inconsistencies with two separate medical reports, and failing to offer specific and legitimate reasons for doing so.

### 6. Summary

While the opinions of record offered by each medical examiner differ to some extent, they all indicate Plaintiff's limited ability to function effectively in a work environment. The consistency among opinions adds more weight to each opinion and has been overlooked by the ALJ. *Orn*, 495 F.3d at 634 (consistency of physicians' reports added further weight to their

opinions). The ALJ therefore erred in rejecting various medical opinions and failed to offer specific and legitimate reasons for rejecting the opinions of Dr. Young, Dr. Morgan, NP Woods, and LMFT James-Friedman.

## CONCLUSION

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits).

The Court **REMANDS** this action for further administrative proceedings for the reasons stated above. On remand, the ALJ shall reevaluate the medical opinions of Dr. Young, Dr. Morgan, NP Woods, and LMFT James-Friedman to determine if Plaintiff has the mental and physical capacity to perform light work. If the ALJ again discounts the medical opinions, he must analyze specific evidence in the record that supports and detracts from his decision, and he may not simply reject the opinion without providing specific and legitimate reasons for doing so.

In addition, because this evidence may affect other portions of the decision, the ALJ shall determine if any further evaluation is required based on the issues Plaintiff raises here. For these reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment, **DENIES**

Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings in accordance with this Order.

    **IT IS SO ORDERED.**

Dated: October 12, 2017

_____

MARIA-ELENA JAMES
United States Magistrate Judge